**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RHONDA M. OLIVA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No: 1:22-cv-02512 |
| ) | |
| MENARD, INC., ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT MENARD, INC.'S ANSWER TO
PLAINTIFF'S FIRST AMENDED COMPLAINT**

NOW COMES the Defendant, MENARD, INC. ("Menard"), by and through its attorneys, OTTOSEN DINOLFO HASENBALG & CASTALDO, LTD., and for its Answer to Plaintiff's First Amended Complaint, states as follows:

**COUNT I - NEGLIGENCE**

1. That on June 16, 2020, Plaintiff, RHONDA M. OLIVA (hereinafter "OLIVA"), was a resident of the city of Oak Lawn, Cook County, Illinois.

**ANSWER:** **Menard, Inc. admits the allegations contained in Paragraph 1 of Plaintiff's first amended complaint.**

2. That on June 16, 2020, Defendant, MENARD, INC. (hereinafter "Defendant") owned, operated, maintained and controlled, a certain store commonly known as Menard's, which is located at 6851 West 159th Street, Tinley Park, Cook County, Illinois 60477 (hereinafter the "premises").

**ANSWER:** **Menard, Inc. admits it owned and operated the retail hardware store located at 6851 West 159th Street, Tinley Park, Cook County, Illinois 60477. Menard denies the remaining allegations contained in Paragraph 2 of Plaintiff's first amended complaint.**

3.     That on June 16, 2020, Defendant Menard, Inc. was, and remains, a foreign corporation organized under the laws of Wisconsin and licensed to conduct business in the State of Illinois.

**ANSWER:     Menard, Inc. admits the allegations contained in Paragraph 3 of Plaintiff's first amended complaint.**

4.     That on the early evening of June 16, 2020, the plaintiff, OLIVA, arrived lawfully at the Defendant's premises with her husband and mother, as a customer.

**ANSWER:     Menard, Inc. admits the allegations contained in Paragraph 4 of Plaintiff's first amended complaint.**

5.     That on June 16, 2020, at or about 7:00 P.M. OLIVA had initially left the store but went back into the premises through the garden center entrance/exit to use the restroom.

**ANSWER:     Menard, Inc. admits Plaintiff entered, exited, and then re-entered the premises to use the restroom on June 16, 2020.**

6.     That on June 16, 2020, at or about 7:00 P.M., as OLIVA proceeded about 10 feet or so into the garden center entrance/exit of the premises, she felt something grab her right ankle/leg, causing her to twist her right knee/leg, which caused her to fall on her right knee, and right side, onto the ground.

**ANSWER:     Menard, Inc. admits Plaintiff fell near the garden center entrance after tripping on a yellow band of unknown origin. Menard, Inc. lacks sufficient knowledge or information to form a belief as to the remaining allegations contained in Paragraph 6 of Plaintiff's first amended complaint.**

7.     That OLIVA, after her fall, saw that a circular yellow band, at least 12 inches in circumference, had wrapped around her right ankle/leg.

**ANSWER:** Menard, Inc. lacks sufficient knowledge or information to form a belief as to what Plaintiff perceived. Menard admits that a circular yellow band was found in the vicinity of Plaintiff's fall.

8. That Defendant's cashier then came over to her as she was on the floor, to see if she needed help, and OLIVA asked that the cashier get her husband, Alan P. Oliva, who was outside in the parking lot at the Defendant's premises.

**ANSWER:** Menard, Inc. admits that Plaintiff was attended to by a cashier.

9. That OLIVA's husband, Alan P. Oliva, then asked that Defendant's store manager to come speak to OLIVA and himself.

**ANSWER:** Menard, Inc. admits that Plaintiff's husband asked the store manager to speak with Plaintiff and himself.

10. That the Defendant's store manager then had them come to the counter and fill out an incident report.

**ANSWER:** Menard, Inc. admits its agents prepared an internal incident report.

11. That when OLIVA was on the premises, she was in the exercise of due care and caution for her own safety.

**ANSWER:** Menard, Inc. denies the allegations contained in Paragraph 11 of Plaintiff's first amended complaint.

12. That on June 16, 2020, there existed a dangerous condition on the said premises: namely the circular yellow band.

**ANSWER:** Menard, Inc. denies the allegations contained in Paragraph 12 of Plaintiff's first amended complaint.

13. That on June 16, 2020, Plaintiff OLIVA was seriously injured as a result of the yellow band on the ground getting entangled on her foot as she walked.

**ANSWER:** **Menard, Inc. denies the allegations contained in Paragraph 13 of Plaintiff's first amended complaint.**

14. That at all times relevant herein, the Defendant was subject to the International Property Maintenance Code, International Building Code and International Fire Code according to the Village of Tinley Park Municipal Code which has adopted same.

**ANSWER:** **Menard, Inc. admits all duties imposed by law and denies any allegation inconsistent therewith.**

15. That at all times relevant herein, the Defendants owed a duty to exercise ordinary care in keeping its premises in a reasonably safe condition for the Plaintiff and all other persons lawfully on the premises.

**ANSWER:** **Menard, Inc. admits all duties imposed by law and denies any allegation inconsistent therewith.**

16. That despite this duty aforesaid, the Defendants committed the following negligent acts and/or omissions:

   a. Caused the said dangerous condition to exist;

   b. Allowed the said dangerous condition to exist;

   c. Failed to repair the said dangerous condition;

   d. Failed to inspect its aisles/entrance/exit for dangerous conditions;

   e. Failed to warn customers of the said dangerous condition when, in the exercise of due care, it knew or should have known that it presented an unreasonable risk of harm;

   f. Failed to provide adequate lighting on the outside. exit/entrance door of the premises and on the inside of the exit/entrance;

   g. Failed to provide a safe, and proper place for plaintiff to walk on while exiting/entering the premises;

  h. Failed to provide a safe means of ingress and egress from exit/entrance of the premises to the public way;

  i. Failed to inspect the premises to be certain it was in a safe and proper condition;

  j. Failed to remove the yellow band from the floor to prevent injury to OLIVA before she came in contact with it and was injured;

  k. Allowed the dangerous condition to exist for an unreasonable length of time;

  l. Failed to remedy the dangerous condition by cleaning the floor in and around the garden center exit/entrance;

  m. Failed to provide "a safe, continuous, and unobstructed path of travel from a point in a building or structure to the public way" in violation of Section 702.1 Means of Egress-General of the International Property Maintenance Code and the International Fire Code-Chapter 10, as adopted by the Village of Tinley Park Municipal Code;

  n. Otherwise carelessly and negligently maintained and controlled the premises causing plaintiff to trip and fall.

**ANSWER:** **Menard, Inc. denies the allegations contained in Paragraph 16, including subparagraphs a-n, of Plaintiff's first amended complaint.**

17. That as a direct and proximate result of one or more of the foregoing careless and negligent acts and/or omissions of the Defendant, the Plaintiff on June 16, 2020, did fall on the ground on the premises after the yellow band twisted her right ankle/leg and was caused to suffer injuries, both personal and pecuniary, including a complex tear of the posterior horn and body of her right media] meniscus, necessitating right knee arthroscopy, all being past, present, and future, including but not limited to

medical expenses, pain and suffering, loss of a normal life, disability, disfigurement and loss of income.

**ANSWER:** **Menard, Inc. denies the allegations contained in Paragraph 17, of Plaintiff's first amended complaint.**

## COUNT II - SPOLIATION

1. That on June 16, 2020, Plaintiff, RHONDA M. OLIVA (hereinafter "OLIVA"), was a resident of the city of Oak Lawn, Cook County, Illinois.

**ANSWER:** **Menard, Inc. admits the allegations contained in Paragraph 1, Count II, of Plaintiff's first amended complaint.**

2. That on June 16, 2020, Defendant, MENARD, INC. (hereinafter "Defendant") owned, operated, maintained and controlled, a certain store commonly known as which is located at 6851 West 159th Street, Tinley Park, Cook County, Illinois 60477 (hereinafter the "premises").

**ANSWER:** **Menard, Inc. admits it owned and operated the retail hardware store located at 6851 West 159th Street, Tinley Park, Cook County, Illinois 60477. Menard denies the remaining allegations contained in Paragraph 2, Count II, of Plaintiff's first amended complaint.**

3. That on June 16, 2020, Defendant Menard, Inc. was, and remains, a foreign corporation organized under the laws of Wisconsin and licensed to conduct business in the State of Illinois.

**ANSWER:** **Menard, Inc. admits the allegations contained in Paragraph 3, Count II, of Plaintiff's first amended complaint.**

4. That on the early evening of June 16, 2020, the plaintiff, OLIVA, arrived lawfully at the Defendant's premises with her husband and mother, as a customer.

**ANSWER:** **Menard, Inc. admits the allegations contained in Paragraph 4, Count II, of Plaintiff's first amended complaint.**

5. That on June 16, 2020, at or about 7:00 P.M. OLIVA had initially left the store but went back into the premises through the garden center entrance/exit to use the restroom.

**ANSWER: Menard, Inc. admits Plaintiff entered, exited, and then re-entered the premises to use the restroom on June 16, 2020.**

6. That on June 16, 2020, at or about 7:00 P.M., as OLIVA proceeded about 10 feet or so into the garden center entrance/exit of the premises, she felt something grab her right ankle/leg, causing her to twist her right knee/leg, which caused her to fall on her right knee, and right side, onto the ground.

**ANSWER: Menard, Inc. admits Plaintiff fell near the garden center entrance after tripping on a yellow band of unknown origin. Menard, Inc. lacks sufficient knowledge or information to form a belief as to the remaining allegations contained in Paragraph 6, Count II, of Plaintiff's first amended complaint.**

7. That OLIVA, after her fall, saw that a circular yellow band, at least 12 inches in circumference, had wrapped around her right ankle/leg.

**ANSWER: Menard, Inc. lacks sufficient knowledge or information to form a belief as to what Plaintiff perceived. Menard admits that a circular yellow band was found in the vicinity of Plaintiff's fall.**

8. That Defendant's cashier then came over to her as she was on the floor, to see if she needed help, and OLIVA asked that the cashier get her husband, Alan P. Oliva, who was outside in the parking lot at the Defendant's premises.

**ANSWER: Menard, Inc. admits that Plaintiff was attended to by a cashier.**

9. That OLIVA's husband, Alan P. Oliva, then asked that Defendant's store manager to come speak to OLIVA and himself.

**ANSWER:    Menard, Inc. admits that Plaintiff's husband asked the store manager to speak with Plaintiff and himself.**

10.    That the Defendant's store manager then had them come to the counter and fill out an incident report.

**ANSWER:    Menard, Inc. admits its agents prepared an internal incident report.**

11.    That when OLIVA was on the premises, she was in the exercise of due care and caution for her own safety.

**ANSWER:    Menard, Inc. denies the allegations contained in Paragraph 11, Count II, of Plaintiff's first amended complaint.**

12.    That on June 16, 2020, there existed a dangerous condition on the said premises: namely the circular yellow band.

**ANSWER:    Menard, Inc. denies the allegations contained in Paragraph 12, Count II, of Plaintiff's first amended complaint.**

13.    That on June 16, 2020, Plaintiff OLIVA was seriously injured as a result of the yellow band on the ground getting entangled on her foot as she walked.

**ANSWER:    Menard, Inc. denies the allegations contained in Paragraph 13, Count II, of Plaintiff's first amended complaint.**

14.    That at all times relevant herein, Defendant's premises was equipped with a video camera system that had at least 30 video cameras.

**ANSWER:    Menard, Inc. admits the allegations contained in Paragraph 14, Count II, of Plaintiff's first amended complaint.**

15.    That at all times relevant herein, Defendant had what it called an *Accident & Injury Reporting - Policy & Procedure #181* which states in pertinent part:

> **I.D3:**
> Video Evidence: All accidents MUST have video evidence submitted for saving. The Front End Manager completing the Online Claim Report must also complete the Insurance Video Request

> using the 1st Incident Report program. Video must be submitted within 24 hours of the accident being reported. All insurance video requests should be logged as, Save Only. If copies of the insurance video are needed by anyone, requests can be submitted in writing to your division's Legal Department at the below address: 5101 Menard Drive
> Eau Claire WI 54703

**ANSWER:** Menard, Inc. solely admits the contents of its Accident & Injury Reporting Policy #181, and denies any allegation that is inconsistent therewith contained in Paragraph 15, Count II, of Plaintiff's first amended complaint.

16. That at all times relevant herein, Defendant had what it called an *Accident & Injury Reporting - Policy & Procedure #181* which states in pertinent part:

> **ID4:**
> Physical Evidence: any physical evidence related to an insurance claim needs to be preserved. Any physical evidence that can be saved should be sent to the Corporate Legal Department for preservation as described below.
> a. Email the following information to the Warranty Center Manager at the distribution center receiving the back haul. Carbon copy wrtyuser@menards.net and a paralegal from the Corporate Legal Department on the email. Print a copy of the email and secure it to the evidence, include:
> i. Claimant's full name
> ii. Incident date and claim number
> iii. Brief description of the evidence
> iv. Trailer number
> v. Any additional evidence that may be necessary to ensure proper preservation of the evidence
> b. Merchandise: if the evidence is a product sold by Menards also record a description of the item including: the SKU, the model number, the vendor and the manufacturer in the Online Claim Report.
>
> **To ensure proper handling, send all items that need to be preserved as evidence on a separate pallet. DO NOT INCLUDE items to be preserved as evidence on pallets with defect items or any other items you are returning to the Distribution Center.**
> 5. If physical evidence cannot be preserved, save any available descriptive evidence referenced in this section as well as photographs of the relevant physical evidence

**ANSWER:** Menard, Inc. solely admits the contents of its Accident & Injury Reporting Policy #181, and denies any allegation that is inconsistent therewith contained in Paragraph 16, Count II, of Plaintiff's first amended complaint.

17. That at all times relevant herein, the video camera system recorded the areas of the premises relevant to the incident.

**ANSWER:** **Menard, Inc. admits that, "at all times relevant herein," namely the time of Plaintiff's fall and approximately 7 minutes beforehand when Plaintiff entered Menard's store, the video camera system "recorded the area of the premises relevant to the incident" (*i.e.*, the site of Plaintiff's fall). Menard denies any allegation that any other timeframe or portion of the premises is relevant and all other remaining allegations contained in Paragraph 17, Count II, of Plaintiff's first amended complaint.**

18. That Defendant manager Katherine Riemer picked up, and wrapped the yellow band, around her arm, after speaking with Plaintiff at the scene of the incident, but did not preserve it which is in violation of an *Accident & Injury Reporting - Policy & Procedure #181* **ID4** cited above.

**ANSWER:** **Menard, Inc. admits Katherine Reimer picked up and threw away the yellow band after speaking with Plaintiff and after Plaintiff's husband had just photographed the band and with full knowledge that the band had been captured on video. Menard denies the remaining allegations contained in Paragraph 18, Count II, of Plaintiff's first amended complaint.**

19. In addition, Defendant employees are taught to always save the videos, and in fact, Defendant manager Katherine Riemer was taught to fill out the incident reports, save the videos and GALLAGHER BASSETT SERVICES, INC. would also save them along with the video time-stamps of same.

**ANSWER:** **Menard, Inc. its employees are instructed to generally preserve videos following accidents and injuries in accordance with its policies. Menard admits its surveillance videos are timestamped. Menard denies the remaining allegations contained in Paragraph 19, Count II, of Plaintiff's first amended complaint.**

20. That on June 29, 2020, Plaintiff sent a certified letter to GALLAGHER BASSETT SERVICES, INC. which stated the following in pertinent part:

> This letter will confirm I represent Rhonda Oliva in connection with an accident that occurred on June 16, 2020 in your store. It is my understanding there is some form of video camera recorded this incident. The purpose of this letter is to request that Menards, its employees, agents, and third-parties, maintain and preserve any and all videotapes, recordings, photographs, digital images, or video obtained via any surveillance, or other camera mounted near the incident from June 16, 2020. The materials should be maintained in their current condition, without any destructive testing, alteration, sale or loss of any videotapes or recordings. Kindly contact my office to make arrangements for duplication of any videotape or digital footage. Thank you in advance for your anticipated cooperation and attention in this matter.

**ANSWER: Menard denies the allegations contained in Paragraph 20, Count II, of Plaintiff's first amended complaint.**

21. On July 10, 2020, GALLAGHER BASSETT SERVICES, INC. adjuster/resolution manager Melanie Jackson sent a response letter indicating that she received Plaintiff's June 29, 2020 letter on July 2, 2020, and wrote the following:

> This will acknowledge receipt of your correspondence and lien, received by our office 07/02/2020, regarding the above captioned claim. Please be advised this file will be handled by the undersigned. Kindly direct all future correspondence to my attention at the address below.
>
> So that we may document the claim, please forward the following information for your client, Rhonda Oliva:
>
> 1. Name and address of employer
> 2. Wage loss and documentation
> 3. Name and address of all treating physicians
> 4. Signed authorization for medical information
> 5. Social Security
> 6. All medical bills and reports gathered
> 7. Recorded interview
>
> With reference to coverage of the matter, please provide your theory of liability. As for any and all information collected regarding this matter, ie, vide and photographs, these items will only be released via discovery.
>
> Thanks in advance.
>
> Sincerely,
> Melanie Jackson, SCLA
> Resolution Manager

**ANSWER: Menard, Inc. admits the contents of Melanie Jackson's response, and denies any allegations inconsistent therewith—and all other**

allegations contained—in Paragraph 19, Count II, of Plaintiff's first amended complaint.

22. That Plaintiff filed her case on May 12, 2022 in the Northern District of Illinois.

**ANSWER:** **Menard, Inc. admits the allegations contained in Paragraph 22, Count II, of Plaintiff's first amended complaint.**

23. That Defendant Menard, Inc.'s defense counsel emailed what it purported to be the full video evidence to Plaintiff on July 6, 2022.

**ANSWER:** **Menard, Inc. admits its defense counsel provided Plaintiff with the surveillance footage of Plaintiff's fall, as more fully described in Defendant's discovery productions. Menard denies the remaining allegations contained in Paragraph 23, Count II, of Plaintiff's first amended complaint.**

24. That said videos Defendant provided show only approximately seven minutes before the fall occurring, the fall itself, and through the Plaintiff leaving the Menard, Inc. premises.

**ANSWER:** **Menard, Inc. admits the contents of its produced videos and denies any allegation inconsistent therewith contained in Paragraph 24, Count II, of Plaintiff's first amended complaint.**

25. That Plaintiff has asked repeatedly in discovery for Defendant to produce video from 24 hours before the fall and Defendant has confirmed repeatedly there is no other video preserved.

**ANSWER:** **Menard, Inc. admits there is no other video than that already disclosed to Plaintiff. Menard denies Plaintiff asked in discovery for video "from 24 hours before the fall," but rather one year's worth of video. Additionally, Menard denies that Plaintiff pursued this evidence in discovery, but rather abandoned said request following Menard's September 7, 2022, written discovery**

objection. **Menard denies the remaining allegations contained in Paragraph 25, Count II, of Plaintiff's first amended complaint.**

26. That immediately following the incident, Defendant Menard, Inc. employees contacted their own corporate office, and GALLAGHER BASSETT SERVICES, INC., who were made aware of the Plaintiff's injuries, and the possible cause, as well as following the mandates of their *Accident & Injury Reporting - Policy & Procedure #181*.

**ANSWER: Menard, Inc. admits that its employees submitted an accident report to its corporate office following Plaintiff's event in accordance with Policy and Procedure #181. Menard admits the contents of its accident report and denies any allegations inconsistent therewith. Menard denies the remaining allegations contained in Paragraph 26, Count II, of Plaintiff's first amended complaint.**

27. That GALLAGHER BASSETT SERVICES, INC. adjuster/resolution manager Melanie Jackson has stated that Gallagher Bassett policy is to upload, and keep all videos from the insured they receive.

**ANSWER: Menard, Inc. admits Jackson stated that Gallagher Bassett's practice is to keep video that is submitted to them by Menard. Menard denies the allegations contained in Paragraph 27, Count II, of Plaintiff's first amended complaint.**

28. Immediately following the incident, Defendant Menard, Inc. knew or should have known that the video was evidence highly relevant to determining the cause of the incident at Defendant Menard, Inc.'s premises, and of Plaintiff's injuries, that this video was the best evidence the Plaintiff could have used to show where the yellow band on the video came from on the date of the incident, and how long it had been there before Plaintiff tripped and fell over it.

**ANSWER:** **Menard, Inc. admits that the video it produced is relevant. Menard denies the remaining allegations contained in Paragraph 27, Count II, of Plaintiff's first amended complaint.**

29. Under these circumstances it was the duty of the Defendant Menard, Inc. to preserve the video and the yellow band in an unaltered condition so it could have been examined by the Plaintiff.

**ANSWER:** **Menard, Inc. denies the allegations contained in Paragraph 29, Count II, of Plaintiff's first amended complaint.**

30. That in fact Defendant Menard, Inc. violated its own policies in gathering and preserving evidence.

**ANSWER:** **Menard, Inc. denies the allegations contained in Paragraph 30, Count II, of Plaintiff's first amended complaint.**

31. In breach of said duty, Defendant Menard, Inc. destroyed the video.

**ANSWER:** **Menard, Inc. denies it "destroyed the video" relevant to—and produced in—this action and the remaining allegations contained in Paragraph 31, Count II, of Plaintiff's first amended complaint.**

32. Prior to the destruction of the video, and the yellow band, the Plaintiff had a reasonable probability of succeeding in a negligence claim against Defendant Menard, Inc. as alleged in the complaint.

**ANSWER:** **Menard denies the remaining allegations contained in Paragraph 32, Count II, of Plaintiff's first amended complaint.**

33. Defendant's breach of that duty deprived Plaintiff of her ability and right to view the video, and examine the yellow band, to perform an investigation to identify how the yellow band got there, what material it was exactly, how long it had been at the location where Plaintiff tripped and fell over it, the employees working in Defendant

Menard, Inc.'s store when the yellow band appeared, as well as other key elements central to Plaintiff's burden of proof in this case.

**ANSWER:** **Menard denies the remaining allegations contained in Paragraph 33, Count II, of Plaintiff's first amended complaint.**

34. Defendant's destruction of the video and the yellow band, deprived Plaintiff of the key pieces of evidence necessary to prove a negligence suit against Defendant.

**ANSWER:** **Menard denies the remaining allegations contained in Paragraph 34, Count II, of Plaintiff's first amended complaint.**

35. As a proximate result of Defendant's failure to preserve and produce the video and the yellow band, plaintiff has suffered damages of a personal and pecuniary nature.

**ANSWER:** **Menard denies the remaining allegations contained in Paragraph 35, Count II, of Plaintiff's first amended complaint.**

WHEREFORE, Defendants pray that this Honorable Court dismiss Plaintiff's first amended complaint with prejudice.

### Affirmative Defense No. 1
(Contributory Negligence)

1. Plaintiff was not in exercise of due care and caution at all times set forth in the Complaint and was guilty of contributory negligence in the following respects:

   (a) Failed to keep a proper lookout;
   (b) Failed to use reasonable care in navigating Menard's premises;
   (c) Failed to appreciate an open and obvious condition; and
   (d) Was otherwise careless and negligent.

WHEREFORE, Defendants pray that this Honorable Court dismiss Plaintiff's first amended complaint with prejudice for the reason that the Plaintiff's own negligence was the sole proximate cause of the Plaintiff's alleged damages.

In the alternative, Defendants pray that this Honorable Court dismiss the Plaintiff's first amended complaint with prejudice for the reason that the Plaintiff's own negligence was more than fifty percent (50%) of the total cause of the Plaintiff's alleged damages.

In the alternative, Defendants pray that this Honorable Court reduce any judgment award on behalf of the Plaintiff by the proportion or amount by which Plaintiff's own negligence caused and contributed to their damages.

**MENARD, INC.**

/s/ W. Anthony Andrews
One of its attorneys

OTTOSEN DINOLFO HASENBALG & CASTALDO, LTD.
W. Anthony Andrews ARDC No. 6217267
1804 N. Naper Blvd; Suite 350
Naperville, Illinois 60563
Phone: 630-682-0085
Fax: 630-682-0788