IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RHONDA M. OLIVA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: 1:22-cv-02512 |
| | ) | |
| MENARD, INC. | ) | The Honorable Judge Jeremy C. Daniel |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S LOCAL RULE 56.1(b)(3)RESPONSE TO INDIVIDUAL DEFENDANT'S RULE 56.1 STATEMENT OF MATERIAL FACTS**

Plaintiff, RHONDA M. OLIVA, hereby responds to the Defendant's Rule 56.1 Statement of Material Facts as follows:

Introduction: Defendant MENARD, INC. did not cite to a basis for *Parties, Venue and Jurisdiction*, so Plaintiff adds the following before responding to Defendant's Rule 56.1 Statement of Material Facts:

**I.    PARTIES, VENUE, JURISDICTION**

A. Plaintiff, RHONDA M. OLIVA (hereinafter "OLIVA"), was a resident of the city of Oak Lawn, Cook County, Illinois on June 16, 2020.

B. That on June 16, 2020, Defendant Menard, Inc. was, and remains, a foreign corporation organized under the laws of Wisconsin and licensed to conduct business in the State of Illinois, which owned, operated, maintained and controlled, a certain store commonly known as Menard's, which is located at 6851 West 159th Street, Tinley Park, Cook County, Illinois 60477.

1

  C. Venue is proper in the Northern District of Illinois as the events giving rise to the claims occurred within the Northern District.

  D. The jurisdiction of this court is proper under 28 U.S.C. § 1332(a)(2) diversity jurisdiction.

## II.  Defendant's Statement of Material Facts

1. Menard, Inc. operates a retail hardware store located at 6851 West 159th Street, Tinley Park, Illinois (the "Tinley Park Menards").

   *Plaintiff's Response:* Admit.

2. Plaintiff Rhonda Oliva, her husband Alan Oliva, and her mother Phyllis Gallegos, visited the Tinley Park Menards on June 16, 2020.

   *Plaintiff's Response:* Admit.

3. Oliva,1 her husband, and her mother entered the Tinley Park Menards through the garden center to look at grills.

   *Plaintiff's Response:* Admit.

4. Oliva did not notice a circular yellow band upon entering the Tinley Park Menards.

   *Plaintiff's Response:* Admit.

5. Oliva left the store with her husband and her mother without making a purchase.

   *Plaintiff's Response:* Admit.

6. Oliva did not notice a circular yellow band upon exiting the Tinley Park Menards.

    *Plaintiff's Response:* Admit.

7. Oliva needed to use the restroom in the Tinley Park Menards, so she returned alone through the garden center to use the restroom.

    *Plaintiff's Response:* Admit.

8. Oliva's husband and mother remained in the parking lot while Oliva returned to the inside of the store.

    *Plaintiff's Response:* Admit.

9. Oliva traveled along the same path into the Tinley Park Menards as she had before.

    Plaintiff's response – deny because facts are in dispute:

    Although, Plaintiff generally passed through the same area when she left, with her mother and husband as depicted at 19:18:31-19:18:36, she had to make room for shoppers on her right. She was not in the same exact area where the band was located which caused her fall. (Def. Ex. 5, 19:18:31-19:18:36 (482147). The second video in Def.'s Ex. 5 (482149) shows her coming back into the store, with a shaft of sunlight coming down right in front of her, and then shows her foot get tangled up in a yellow band visible at seconds 30-34 as she falls. (Def Ex. 5, 19:21:30-19:21:34, Pl. Ex. 5).

10. While traveling, Oliva testified she was not distracted by anybody or anything.

    **Plaintiff's response – deny because facts are in dispute:**

    Mrs. Oliva did say those words when asked, but also testified that when she was re-entering the Menard's to use the restroom, she walked in and noticed a cashier to her left,

3

and to the right there is a walkway into the store and they have displays up along the wall and then on the other side is all "garden stuff, pots and pans" and garden tools. She also saw a large gorilla, and bear, to her immediate left and right as she walked in. Also, the cart corral was completely full as she walked in. She was initially going to walk straight to the bathroom in a diagonal fashion but "they have some stuff there that they sell sometimes, Christmas they'll have Christmas things, summertime, summer stuff." She was "planning on going that way" but she "noticed she could not get through." (Def. Ex. 1, PP 62, lines 17-24, PP 64, lines 1-10, PP 65, lines 1-24 PP 108, lines 4-6, Def. Ex. 3-photo, page 6).

11. Olivia testified that it was a nice summer day, and the sun was still up.

    *Plaintiff's Response:* Admit.

12. Olivia testified that the store was adequately lit inside.

    *Plaintiff's Response:* Admit.

13. The floor that Oliva was walking on was flat level cement.

    **Plaintiff's response – deny because facts are in dispute:**

    Katherine Riemer did not describe it as flat, or level, but did state concrete.

14. Oliva was wearing open-toed sandals.

    *Plaintiff's Response:* Admit.

15. Oliva walked ten to twelve feet into the Tinley Park Menards when she tripped and fell at 7:21:33 P.M.

    *Plaintiff's Response:* Admit.

16. After falling and sitting back up, Oliva saw a circular yellow band.

    *Plaintiff's Response:* Admit.

17. After falling, Oliva formed the belief that she tripped over the circular yellow band.

    **Plaintiff's response – deny because facts are in dispute:**

    She did not just "form a belief," the yellow band did in fact cause her to fall. The video in Ex. 5 (482149) shows her coming back into the store and a shaft of sunlight coming down right in front of her, and then shows her foot get tangled up in a yellow band visible at seconds 30-34 as she falls. (Pl. Ex. 5-still photo of video, Def. Ex.5 , 19:21:30-19:21:34).

18. Oliva testified she did not see the circular yellow band before she fell.

    *Plaintiff's Response:* Admit.

19. Olivia testified that her left foot stepped onto the circular yellow band causing it to flip up and catch her right foot.

    *Plaintiff's Response:* Admit.

20. Oliva does not know how the circular yellow band got there.

    *Plaintiff's Response:* Admit.

21. Oliva did not see anyone (including a guest, vendor, or a Menard employee) put the circular yellow band there.

    *Plaintiff's Response:* Admit.

22. Oliva testified she does not know how long the circular yellow band had been there.

    *Plaintiff's Response:* Admit.

5

23. Oliva testified she does not know if the circular yellow band was there the first time she entered and exited the Tinley Park Menards.

    *Plaintiff's Response:* Admit.

24. Oliva asked a Menard employee to go outside the store and get her husband and mother.

    *Plaintiff's Response:* Admit.

25. A Menard employee brought Oliva's husband and mother to her location.

    *Plaintiff's Response:* Admit.

26. Alan Oliva instructed Rhonda Oliva to remain on the floor and not touch anything until a manager came.

    *Plaintiff's Response:* Admit.

27. Alan Oliva took photos of Rhonda Oliva and the circular yellow band.

    *Plaintiff's Response:* Admit.

28. Oliva asked a Menard employee to remove the circular yellow band.

    *Plaintiff's Response:* Admit.

29. Oliva testified that she does not know of anyone else that has tripped or stumbled on a yellow circular band.
    *Plaintiff's Response:* Admit.

30. Menard employee Katherine Reimer was unaware that the circular yellow band was there prior to Oliva pointing it out and would have removed it had she had seen it to keep the front end clean.

    *Plaintiff's Response:* Admit.

31. After being notified of the circular yellow band by Oliva, Riemer picked it up and disposed of it.  *Plaintiff's Response:* Admit.

32. Riemer testified that she does not remember there being a guest injury due to tripping on a circular yellow band.

   **Plaintiff's response – deny because facts are in dispute:**

Menard employee Katherine Riemer filled out an incident report involving a Richard Doornboos on June 6, 2020 (for alleged June 5, 2020 incident), which stated the following, in pertinent part: "Guest was coming into the store up front and tripped on a piece of yellow banding strap. He fell and hit his right elbow and left knee."(See Plaintiff's Ex. 6). However, Menard employee Katherine Riemer claims she never heard of Richard Doornboos, never filled out another report regarding someone falling at the store regarding a yellow band. (Def. Ex. 2-Riemer, PP 65-68).

33. Reimer does not know where the circular yellow band came from.

   **Plaintiff's response – deny because facts are in dispute:**

Menard employee Katherine Riemer filled out an incident report involving a Richard Doornboos on June 6, 2020 (for alleged June 5, 2020 incident), which stated the following, in pertinent part: "Guest was coming into the store up front and tripped on a piece of yellow banding strap. He fell and hit his right elbow and left knee." In addition, Katherine Riemer testified that the yellow band could have been "off of a package, a big box, a lawn and leaf bag." (See Plaintiff's Ex. 6, Def. Ex. 2-Riemer PP54).

34. Oliva's fall was captured on video.

   *Plaintiff's Response:* Admit.

35. Jesus Nieto, another Menard employee, testified that, to his knowledge, such yellow bands are not found on products in Menard's store.

    *Plaintiff's Response:* Admit Jose Nieto apparently stated that. As stated in numerous filings and Plaintiff previous motions, the Plaintiff was not allowed to attend and could not cross-examine Mr. Nieto.

        Respectfully submitted,

        /s/Timothy J. Deffet
        The Law Office of Timothy J. Deffet
        ARDC# 6255823
        Timothy J. Deffet
        Attorney for Plaintiff RHONDA M. OLIVA
        THE LAW OFFICE OF TIMOTHY J. DEFFET
        5875 N. Lincoln Ave. #231
        Chicago, IL 60659
        (773) 627-4719
        tim@timdeffetlaw.com

**CERTIFICATE FILING AND PROOF OF SERVICE**

I hereby certify that on Jan. 22, 2024, I electronically filed the foregoing **PLAINTIFF OLIVA'S RESPONSE TO DEFENDANT'S RULE 56.1 STATEMENT OF MATERIAL FACT,** with the Clerk of the Court using the CM/ECF System, which will send notifications of such to all attorneys of record, and via email to all:

OTTOSEN DINOLFO HASENBALG & CASTALDO, LTD.
W. Anthony Andrews
Joseph S. Davidson
John Motylinski
wandrews@ottosenlaw.com
jdavidson@ottosenlaw.com
jmotylinski@ottosenlaw.com
1804 North Naper Boulevard, Suite 350
Naperville, Illinois 60563
(630) 682-0085