UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RHONDA M. OLIVA,
    Plaintiff

v.

MENARD, INC.,
    Defendant

No. 22 CV 2512

Judge Jeremy C. Daniel

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Menard, Inc.'s ("Menards") motion for summary judgment under Federal Rule of Civil Procedure 56. (R. 82.)[1] For the following reasons, the motion is granted in part and denied in part.

**BACKGROUND**[2]

On June 16, 2020, Plaintiff Rhonda M. Oliva, her husband, and her mother visited a Menards store located at 6851 West 159th Street, Tinley Park, Illinois. (R. 94, Plaintiff's Response to Defendant's Statement of Material Facts ("Pl.'s Resp. to Def.'s SOF") ¶¶ 1–2.) Initially, Oliva and her family entered and exited Menards through the entrance near their garden center without incident. (*Id.* ¶¶ 3–6.) Shortly after returning to her car, however, Oliva needed to use the restroom, so she re-entered Menards alone, again through the garden center. (*Id.* ¶¶ 7–8.)

---

[1] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

[2] The following facts are taken from the parties' Local Rule 56.1 submissions, the materials cited therein, and other aspects of the record in this case. All facts are genuinely undisputed unless otherwise noted.

After walking ten to twelve feet inside, Oliva tripped. (*Id.* ¶ 15.) When she sat up, Oliva noticed a circular yellow band, which she alleges caused her to fall. (*Id.* ¶¶ 16–17.) According to Oliva, her left foot stepped onto the yellow band, causing it to flip up and catch her right foot. (*Id.* ¶ 18.) Afterward, Oliva had a scrape on her hand and a red mark on her knee. (*See* R. 93-7 ("Oliva Incident Report") at 1; R. 83-1 ("Oliva Dep.") at 132:13–14.)

Oliva asked a Menards employee to go outside and get her husband and mother. (Pl.'s Resp. to Def.'s SOF ¶ 24.) Oliva's husband reentered the store and took photos of her and the yellow band. (*Id.* ¶ 27.) A cashier who noticed Oliva's fall contacted Menards Manager Katherine Reimer. (*Id.*) Reimer asked Oliva if she needed an ambulance, and Oliva declined. (*Id.*) Oliva asked Reimer to remove the yellow band before anyone else fell, which Reimer picked up and disposed of. (Pl.'s Resp. to Def.'s SOF (*Id.* ¶¶ 28, 31; Oliva Dep. at 89:7–10, 93:13–19; R. 106, Defendant's Response to Plaintiff's Statement Of Additional Material Facts ("Def.'s Resp. to Pl.'s SOAF") ¶ 3.) Additionally, Reimer completed an incident report about the fall. (Def.'s Resp. to Pl.'s SOAF ¶ 12; *see* Oliva Incident Report at 2.) Afterward, Oliva walked out of Menards her own, without limping or complaining of pain. (Oliva Dep. at 98:10–24.)

Menards' surveillance cameras recorded Oliva's fall. (Pl.'s Resp. to Def.'s SOF ¶ 34.) Reimer testified that she always saved surveillance video after accidents. (Def.'s Resp. to Pl.'s SOAF ¶ 4; R. 83-2 ("Reimer Dep.") at 86:22–23.) Menards then transmitted copies of the surveillance videos to its risk management consultant,

2

Gallagher Bassett Services, Inc. ("Gallagher Bassett"). (Def.'s Resp. to Pl.'s SOAF ¶¶ 4, 9.) On June 29, Oliva's attorney mailed Menards a letter "request[ing] that Menards, its employees, agents, and third-parties, maintain and preserve any and all videotapes, recordings, photographs, digital images, or video obtained via any surveillance, or other camera mounted near the incident from June 16, 2020." (*Id.* ¶ 5; R. 93-2 at 1.) On July 10, Gallagher, Bassett's adjuster/resolution manager, wrote Oliva's counsel "acknowledging receipt of your correspondence and lien, received by our office 07/02/2020." (Def.'s Resp. to Pl.'s SOAF ¶ 6; R. 93-3 at 1.) Menards has produced surveillance footage beginning seven minutes before Oliva's fall. (R. 79 ¶¶ 23–24.) It is unclear what happened to the additional surveillance footage of the store that day; Menards maintains that "there is no other video than that already disclosed to Plaintiff." (*Id.* ¶ 25.)

About two days after her fall, Oliva visited her primary care reporting rib or chest pain. (Oliva Dep. at 99:3–11, 131:15–23.) Her primary care doctor concluded that she had sustained internal bruising near her right rib cage and a right knee injury. (*Id.* at 74:24–75:6, 131:15–132:16.)

In this suit, Oliva charges Menards with negligence regarding her fall (Count I) and negligent spoilation for failing to produce surveillance video footage more than seven minutes before her fall. (Count II). (R. 77.)[3] Menards seeks summary judgment on both claims. (R. 82.)

---

[3] The Court has subject matter jurisdiction over these state law claims based on diversity of citizenship. *See generally* 28 U.S.C. § 1332. Oliva is a citizen of Illinois and Menards is a citizen of Wisconsin. (Pl.'s Resp. to Def.'s SOF at 1.) The complaint includes two counts, each of which seeks damages in excess of $50,000. At this point, the record reflects an amount in

3

## LEGAL STANDARD

Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Piotrowski v. Menard, Inc.*, 842 F.3d 1035, 1038 (7th Cir. 2016) (citing Fed. R. Civ. P. 56(a)). "[A] 'dispute about a material fact is "genuine," . . . if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Orozco v. Dart*, 64 F.4th 806, 814 (7th Cir. 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of proof. *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (explaining that Rule 56 "imposes an initial burden of production on the party moving for summary judgment to inform the district court why a trial is not necessary"). After the moving party presents its evidence, the non-movant must then go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 255 (quotation and footnotes omitted). If the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then the movant is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986). "All facts are construed and all reasonable inferences are drawn in the light most favorable to the non-moving party." *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 649 (7th Cir. 2014).

---

controversy in excess of $75,000. (*See* R. 77 at 4, 10.); *Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 732 (7th Cir. 2021) ("Normally, a plaintiff can meet this pleading requirement by simply alleging a plausible amount in controversy.").

## ANALYSIS

**I.    COUNT I: NEGLIGENCE**

Illinois law governs this diversity case. *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 876 (7th Cir. 2005). "Where, as here, a plaintiff seeks recovery based on a defendant's alleged negligence, the plaintiff must establish (1) the existence of a duty owed by the defendant, (2) a breach of that duty, and (3) an injury proximately caused by that breach." *Haslett v. United Skates of Am., Inc*, 136 N.E.3d 172, 182 (Ill. App. Ct. 2019). Illinois law imposes a duty upon property owners to exercise ordinary care in maintaining their property in a reasonably safe condition. *Id.* Menards agrees that it owed Oliva a duty to maintain a reasonably safe store and that the yellow band caused Oliva to fall. (*See* R. 84 at 4; R. 107 at 3–4, 6.) But Menards disputes that it breached its duty to Oliva. (*Id.*)

Liability can be imposed when a business' invitee is injured by slipping on a foreign object on its premises if the invitee establishes "(1) that the object was placed there by the negligence of the proprietor; (2) his servants knew of its presence; or (3) the object was there a sufficient length of time so that, in the exercise of ordinary care, its presence should have been discovered (*i.e.*, the proprietor had constructive notice of the object)." *Haslett*, 136 N.E.3d at 182; *Zuppardi*, 770 F.3d at 649. Menards argues that it is entitled to summary judgment because there is no evidence that the yellow band was on the floor due to Menards' or its employees' negligence or that it had notice of the condition. (R. 84 at 11.)

5

### A. Placement by Menards or its Employees

The Court first considers whether there is a triable issue regarding whether the yellow band was placed on the floor by Menards or its employees. "In order to create a triable issue of fact with respect to placement of the substance by [Menards], [Oliva] need[s] to present some evidence showing that the substance was more likely placed on the premises through [Menards'] negligence rather than a customer's." *Zuppardi*, 770 F.3d at 649. Oliva "can establish that the hazardous condition was created by [Menards] by showing that such a condition 'is related to [its] business' and by offering 'some slight evidence that [Menards] or [its] servants, rather than a customer, placed the hazardous object/condition on the floor." *Haslett*, 136 N.E.3d at 182 (citation omitted).

Even viewing the evidence in a light most favorable Oliva, she has failed to produce evidence that Menards, as opposed to a third-party, was responsible for the yellow band being on the floor. Manager Reimer's testimony that the yellow band might have come "off of a package, a big box, [or] a lawn and leaf bag," sold by Menards is insufficient. (Pl.'s Resp. to Def.'s SOF ¶ 33; Reimer Dep. at 54:13). Oliva cannot merely "'identif[y] a potential source' of the [object] to avoid summary judgment." *Zuppardi*, 770 F.3d at 650 (quoting *Ciciora v. CCAA, Inc.*, 581 F.3d 480, 483 (7th Cir. 2009)). As in *Zuppardi*, Manager Reimer's testimony only constitutes proof that "[Oliva] slipped on something that happens to be sold by [Menards], and such evidence fails to support an inference that [Menards] caused the spill." *Id.*

Likewise, in *Piotrowski*, the Seventh Circuit concluded that "[i]t is not enough to say that Menard sold river rocks" on which the plaintiff tripped, or that the object

6

was used in the general vicinity of the plaintiff's fall. 842 F.3d at 1039. The court reasoned that the plaintiff's testimony "that a Menard employee's actions could have caused the rocks to spill," was merely speculative and insufficient to survive summary judgment. *Id.* As the court explained, "Piotrowski did not see the rocks fall, and neither she nor anyone else to whom she points knew how the rocks at issue ended up where they did[.]" *Id.* Here, too, the evidence indicates, at best, only a possibility that Menards was responsible for the yellow band's position on the floor.

### B. Notice

Absent evidence that Menards placed the yellow band on the floor, Oliva must establish that Menards had actual or constructive notice of its presence. *See Zuppardi*, 770 F.3d at 650. Oliva makes no claim that Menards had actual notice; rather, she disputes constructive notice. (R. 93 at 8.)

> Constructive notice can be established under Illinois law by either presenting evidence that (1) the dangerous condition existed for a sufficient amount of time so that it would have been discovered by the exercise of ordinary care, or (2) the dangerous condition was part of a pattern of conduct or a recurring incident.

*Zuppardi*, 770 F.3d at 651. "[G]enerally whether a defect . . . has existed a sufficient length of time prior to the injury for [the defendant] to be deemed to have constructive notice is a question of fact for the jury." *Livings v. City of Chi.*, 326 N.E.2d 170, 173 (1975).

Oliva concedes the absence of "testimony as to the length of time the yellow band was present on the premises prior to [Oliva] tripping and falling," which is necessary to support a fact dispute on a "sufficient amount of time" theory. (R. 93 at

7

7); *Zuppardi*, 770 F.3d at 651 ("Absent any evidence demonstrating the length of time that the substance was on the floor, a plaintiff cannot establish constructive notice.").

There is a genuine dispute whether the condition was a part of a "pattern or practice," however. To make such a showing, "[w]hat is needed is a pattern of dangerous conditions which were not attended to within a reasonable period of time." *Culli v. Marathon Petroleum Co.*, 862 F.2d 119, 126 (7th Cir. 1988) (emphasis added). Here, Oliva points to an incident report that Manager Reimer completed fourteen days before her visit to Menards. (R. 93 at 8; Def.'s Resp. to Pl.'s SOAF ¶ 11; R. 93-6 at 1.) This report stated that: "Guest was coming into the store up front and tripped on a piece of yellow banding strap. He fell and hit his right elbow and left knee." (*Id.*)

Menards claims that the Court may not consider this report because it is hearsay. (Def.'s Resp. to Pl.'s SOAF ¶ 11 n.1; R. 107 at 5 n.3.) The Court disagrees. "'Hearsay,' in its simplest terms, is an out-of-court statement offered for the truth of the matter asserted." *Jordan v. Binns*, 712 F.3d at 1123, 1126 (7th Cir. 2013); *see* Fed. R. Evid. 801(c). "As a general rule, hearsay is not admissible." *Id.* at 1126–27 (citing Fed. R. Evid. 802). A party may not rely upon inadmissible hearsay in an attempt to defeat summary judgment. *MMG Fin. Corp. v. Midwest Amusement Park, LLC*, 630 F.3d 651, 656 (7th Cir. 2011). "But the Federal Rules of Evidence ("FRE") contain numerous exceptions to the rule against hearsay." *Jordan*, 712 F.3d at 1127 (citing Fed. R. Evid. 802, 803). "Additionally, FRE 801(d) exempts or excludes from the definition of 'hearsay' certain statements that otherwise would be hearsay." *Id.* Oliva proffers the incident report under Federal Rule of Evidence 801(d)(2)(A) as a non-

8

hearsay statement admission by a party opponent or Rule 803(6), as a record of regularly conducted activity. (R. 93 at 8.)

"Rule 801(d)(2)(A) provides that a statement is not hearsay if it 'is offered against an opposing party and . . . was made by the party in an individual or representative capacity.'" *Jordan*, 712 F.3d at 1128 (quoting Fed. R. Evid. 801(d)(2)(A)). "There are only two requirements for admissibility under FRE 801(d)(2)(A): a statement was made by a party, and the statement was offered against that party." *Id.* at 1128–29. The incident report satisfies these requirements because, one, the statement was made by Manager Reimer, who authored the report as part of her job duties for Menards, and two, the incident report is offered against Menards. (Def.'s Resp. to Pl.'s SOAF ¶ 4; Reimer Dep. at 37:11–25; R. 93-6 at 1); *see generally Aliotta v. Nat'l R.R. Passenger Corp.*, 315 F.3d 756, 762 (7th Cir. 2003) ("To qualify as an admission, an employee need only be performing the duties of his employment when he comes in contact with the particular facts at issue.").

Accordingly, viewing this evidence in a light most favorable to Oliva, the Court concludes that there is sufficient evidence to put the issue of constructive notice into genuine dispute. A reasonable jury could conclude that the incident report supplied Menards with notice that the yellow bands that had fallen off of Menards products posed a danger to customers, thus obligating Menards to take preventative steps to ensure no further injuries occurred. And a jury could also conclude that Oliva was injured due to the failure to put such measures in place.

Therefore, Menards' motion for summary judgment on Count I is denied.

## II. COUNT II: SPOILATION

"Under Illinois law, spoliation of evidence is a form of negligence; proof of spoliation requires a showing that the defendant owed the plaintiff a duty to preserve evidence, breached that duty,[4] and thereby proximately caused the plaintiff to be unable to prove the underlying cause of action." *Brian J. Wanca, J.D., P.C. v. Oppenheim*, 226 N.E.3d 732, 745 (Ill. App. Ct. 2023). "A plaintiff must allege that 'a reasonable person in the defendant's position should have known the evidence would be material to potential civil litigation.'" *Id.* (quoting *Jones v. O'Brien Tire & Battery Service Center, Inc.*, 871 N.E.2d 98 (Ill. App. Ct. 2007)). "The plaintiff must also prove that 'but for the destruction of these records, she would have had a reasonable probability of succeeding in her case.'" *Id.* (citation omitted).

Because Menards has only produced video footage beginning seven minutes before Oliva's fall, the plaintiff alleges that Menards violated its duty to preserve evidence; namely the yellow band and video footage beyond that produced. (R. 79 ¶¶ 23–25; R. 93 at 11.) Menards argues summary judgment is proper because it had no duty to preserve the yellow band or additional video footage and there is no evidence that such caused Oliva to be unable to prove her case. (R. 84 at 4.)

---

[4] The parties dispute whether this element requires a showing of "a special circumstance" warranting preservation. (R. 84 at 7–8; R. 93 at 13; R. 107 at 6–7.) The Court does not fault the parties for this; "it would be an understatement to say that this [negligent spoliation] area of Illinois law is not governed by bright-line rules." *Schaefer*, 839 F.3d at 609. Nevertheless, as explained *infra* II(A), several Illinois Appellate Court decisions hold that a duty to preserve relevant and material evidence exists for a 'potential litigant" in possession or control of relevant or material evidence. *See*, *e.g.*, *Jones v. O'Brien Tire & Battery Serv. Ctr., Inc.*, 752 N.E.2d 8, 12–13 (Ill. App. Ct. 2001) ("*Jones I*"). Because both parties acknowledge this requirement, it matters little whether the Court characterizes the duty as a "special circumstance." (*See* R. 84 at 7; R. 93 at 13.)

**A.    Duty**

"The general rule is that a party has no duty to preserve evidence." *Jones*, 871 N.E.2d at 105. But such a duty may arise if "the defendant should have foreseen that the evidence in question was material to a potential civil action." *Jones I*, 752 N.E.2d at 12–13. "The duty remains as long as the defendant should reasonably foresee that further evidence material to a potential civil action could be derived from the physical evidence in the defendant's possession[.]" *Andersen v. Mack Trucks, Inc.*, 793 N.E.2d 962, 969 (Ill. App. Ct. 2003).

Oliva argues the evidence supports an inference that a reasonable entity in Menards' position should have the surveillance video footage would be material to potential civil litigation. Viewing the evidence in a light most favorable to Oliva, the Court agrees. It is undisputed that within less than two weeks after the fall, Oliva's counsel contacted Menards asking them to preserve relevant surveillance video. (*Id.* ¶ 5.) Menards has offered no explanation for what happened to the footage that Manager Reimer ordinarily would have saved and then transmitted to Gallagher Bassett. (*See* R. 84 at 7–8; R. 107 at 8; Def.'s Resp. to Pl.'s SOAF ¶ 4.) This case is thus analogous to *Schaefer v. Universal Scaffolding & Equipment, LLC*, where "[t]he foreseeability condition [was] straightforward" because the defendants "knew that the bar was involved in a serious workplace injury, which is why [the plaintiff] sought to preserve it in the first place." 839 F.3d 599, 611 (7th Cir. 2016). Accordingly, there is a genuine dispute whether Menards should have reasonably foreseen that more

11

than seven minutes of video was material to Oliva's potential civil action regarding her fall. Therefore, the defendant's motion is denied with respect to the video footage.

The Court reaches a different conclusion with respect to the yellow band. The Court is not convinced a reasonable jury could conclude that Menards should have foreseen the yellow band was material to the civil action or that having such would improve Oliva's chances of proving her underlying case. First, following the incident, Oliva declined an ambulance, did not identify a serious injury, and left an impression that the yellow band should be thrown away. (Pl.'s Resp. to Def.'s SOF ¶¶ 27, 28.) Second, concerning the band's materiality, the parties do not dispute that the yellow band existed, only whether it caused her to fall. (*Id.* ¶¶ 16–17.) Oliva captured photographs of the yellow band the day of the incident, which, if necessary, could potentially be used at trial to prove it existed or even trace its origins to some product within Menards. (*Id.* ¶ 27.) Surveillance footage shows the yellow band near the plaintiff's feet. All of this renders the yellow band cumulative of other evidence in the record. For these reasons the defendant's motion for summary judgment is granted with respect to the yellow band.

### B. Causation

"[I]n a negligence action involving the loss or destruction of evidence, a plaintiff must allege sufficient facts to support a claim that the loss or destruction of the evidence caused the plaintiff to be unable to prove an underlying lawsuit." *Boyd v. Travelers Ins. Co.*, 652 N.E.2d 267, 271 (Ill. 1995), *as modified on denial of reh'g* (June

12

22, 1995).[5] Oliva must also show that with such evidence, she "would have a 'reasonable probability' of winning." *Schaefer*, 839 F.3d at 611 (quoting *Boyd*, 652 N.E.2d at 271 n.2). "But 'reasonable probability' is less than proof of success by a preponderance of the evidence, because that is the standard required to show that [Oliva] would have won the underlying suit." *Id.* "Causation in a negligence case is generally a question for the trier of fact, unless there is no material dispute or only one conclusion is clearly evident." *Id.*

Here, viewing the evidence in the light most favorable to Oliva, she has adduced sufficient evidence to put causation into genuine dispute. First, Oliva has shown a reasonable probability that the loss of evidence caused her to lose the underlying case. If there were video even mere hours before the incident, there is a reasonable probability that such could have helped Oliva determine how the yellow band came to be on the ground and how long it was on the floor. *See Zuppardi*, 770 F.3d at 651. There is also a reasonable probability that the surveillance video could have shown that the yellow band on the floor resulted from Menards' negligence. None of this would be cumulative of evidence already in the record. Accordingly, it is reasonably probable that the missing yellow band and video "deprived [Oliva] of the opportunity to develop . . . important proof" necessary for her underlying case. *Schaefer*, 839 F.3d at 612; *see also Boyd*, 652 N.E.2d at 271. Oliva has therefore raised

---

[5] Although Oliva brings her spoilation claim concurrently with her underlying negligence claim, this is permissible under Illinois law: "a single trier of fact may be allowed to hear an action for negligent spoliation concurrently with the underlying suit on which it is based." *Boyd*, 652 N.E.2d at 272 (citation omitted).

a genuine issue of fact as to whether, with the missing surveillance footage, she would have had a reasonable probability of success on her negligence claim.

Accordingly, Menards' motion for summary judgment on Count II is denied.

## CONCLUSION

For the reasons stated in this Memorandum Opinion, Menards' motion for summary judgment [82] is granted in part and denied in part. The Court grants summary judgment in the defendant's favor on spoliation concerning the yellow band. The Court denies the defendant's motion in all other respects. Status hearing set for September 12, 2024, at 9:30 a.m. The parties should be prepared to address the amount in controversy, the length of trial, and availability for trial in March, April, and May of 2025.

Date: August 29, 2024

JEREMY C. DANIEL
United States District Judge