UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RHONDA M. OLIVA,
    Plaintiff

   v.

MENARD, INC.,
    Defendant

No. 22-cv-02512

Judge Jeremy C. Daniel

**MEMORANDUM OF DECISION**

The plaintiff injured her knee when she tripped and fell in the defendant's home improvement store. This led to a two-count complaint in which the plaintiff alleged negligence and spoliation. According to the plaintiff, the defendant's failure to pick up a yellow band on the floor near the entrance to the store caused her to trip and fall. *See, e.g.*, R. 77 ¶ 17. In addition, the plaintiff alleged that the defendant failed to preserve video surveillance footage related to the plaintiff's fall as well as the yellow band that caused the plaintiff's fall. *See, e.g.*, R. 77 ¶ 33.

The Court granted partial summary judgment to the defendant on the plaintiff's spoliation claim with respect to the yellow band. R. 119. The Court subsequently held a four-day bench trial on the plaintiff's remaining claims. *See* R. 140, 141, 142, and 148. After considering the evidence presented at trial, the Court finds for the defendant on the plaintiff's negligence and remaining spoliation claims. This memorandum of decision sets forth the Court's findings of fact and conclusions of law.

## FINDINGS OF FACT

The plaintiff, accompanied by her mother and husband, went to a Menards home improvement store on June 16, 2020. R. 150 at 127. The three went to Menards to find a grill for the plaintiff's mother. *Id.* at 129. They left the store at approximately 7:18 p.m. PX 17, 482148 at 19:18:38; PX 17, 482147 at 19:18:34. The plaintiff returned to the store a few minutes later to use the restroom. R. 150 at 130.

The plaintiff reentered the store at approximately 7:21 p.m. PX 17, 482148 at 19:21:29; PX 17, 482149 at 19:21:32. As she entered the store, the plaintiff's feet became entangled in a yellow band that was on the floor. PX 17, 482149 at 19:21:33. This caused the plaintiff to fall. *Id.* at 19:21:34. The plaintiff's hands hit the ground first, then her right elbow and right knee. *Id.* at 19:21:34-19:21:35.

Surveillance footage captured the plaintiff's fall. *See id.* at 19:21:34. The yellow band is slightly visible at 7:17 p.m., which is when the surveillance footage starts. *See* PX 17, 482147 at 19:17:00. At this point, only a curved edge of the band is visible, though partially obscured by a ray of sunlight, in the lower left portion of the surveillance footage. *Id.* The yellow band becomes more visible at approximately 7:18 p.m., which is when a woman wearing a red shirt entered the store and, while obtaining a shopping cart, stepped on or kicked the band. *Id.* at 19:18:22-19:18:27. When she did, part of the band lifted up from the ground and the band came to rest in a different position. *Id.* This happened as the plaintiff and her mother were about to exit the store. *See id.*

The surveillance footage shows ten individuals walking pass the yellow band between 7:17 p.m. and 7:21 p.m., to include the plaintiff, her husband, her mother, a

2

store employee, and six other customers. *See* PX 17, 482147 and 482149. There is no indication that any of them noticed the yellow band on the floor prior to the plaintiff's fall. *See, generally*, PX 17, 482147 and 482149.

Surveillance footage did not capture how the yellow band came to be on the floor near the entrance to the store. This store has more than one hundred cameras. R. 152 at 152. The cameras' primary purpose is loss prevention; that is, to prevent theft. *Id.* at 153-53. There are two cameras, camera 18 and camera 29, that capture footage near the location where the plaintiff fell. R. 151 at 155; R. 152 at 161; *see also*, *e.g.*, PX 17, 482147 and 482150. Neither shows the area of the floor where most of the yellow band was when the woman in the red shirt inadvertently kicked the yellow band into view of the camera. *See* R. 151 at 155-56; *see also* R. 152 at 161; *see also*, *e.g.*, PX 17, 482147 and 482150.

The source of the yellow band was likely a bundle of yard waste bags. *See* PX 17, 482150 at 19:26:56 (employee holding yellow band the plaintiff tripped on) and 482153 at 19:31:22 (customer leaving the checkout line with yard waste bags bundled with yellow bands); *see also* R. 151 at 103 *and* R. 152 at 164-65. But there is no evidence that showed how the yellow band came to be on the floor near the store entrance. *See, e.g.*, R. 150 at 193-94. The defendant did not display or store yard waste bags near the entrance to the store. R. 152 at 166. Nor is there any evidence concerning how long the yellow band had been on the floor prior to the plaintiff's fall.

This was not the first time a customer tripped on a yellow band at the store. Eleven days earlier, a customer entering the store tripped on a yellow band and fell.

PX 2; R. 152 at 168. According to two of the defendant's employees, these were the only two instances they were aware of where a customer tripped on a yellow band in the store. *See, e.g.*, R. 151 at 33-36; *see also, e.g.*, R. 152 at 168-170.

Generally, store employees were responsible for clearing debris and cleaning up spills they saw or were told about. R. 151 at 19 and 173. When not helping customers, employees had to keep their assigned areas clean. *Id.* at 90, 170, and 173. But employees did not have specific cleaning tasks assigned to them. *Id.* at 85. Rather, the defendant contracted with a cleaning service that came in after hours to clean the store. *See id.* at 84 and 173.

After the plaintiff fell, a store cashier let the plaintiff's mother and husband know that the plaintiff had fallen. PX 17, 482150 at 19:22:10. A store manager talked to the plaintiff, collected the yellow band, and prepared an incident report, which included a list of cameras and times so that the defendant could preserve surveillance footage related to the plaintiff's fall. *See id.* at 19:25:28-19:27:59; PX 1; R. 151 at 104-07. The plaintiff's husband asked the store manager to view the surveillance footage, but the store manager refused his request. R. 150 at 213-14. Consistent with her training, the store manager reviewed the surveillance footage, identified footage that included the plaintiff, and requested that the footage be preserved. R. 151 at 18, 26, and 48; R. 152 at 155. The store manager made sure to preserve a few minutes of surveillance footage before and after the plaintiff's fall. R. 151 at 107. The store manager did not look to preserve surveillance footage of how the yellow band came to

4

be on the floor. R. 151 at 151. The plaintiff delivered a preservation letter to the defendant on or about June 29, 2020. DX 3; R. 152 at 170.

## CONCLUSIONS OF LAW

### I. NEGLIGENCE

Illinois law governs this diversity action. To prove negligence under Illinois law, the plaintiff must "prove the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and injury proximately resulting from the breach." *Cruz v. Costco Wholesale Corp.*, 134 F.4th 984, 987 (7th Cir. 2025). "A business owes customers a duty to maintain its premises in a reasonably safe condition to avoid injuries to those customers." *Id.* (internal quotations omitted). "Liability can be imposed when a business's invitee is injured by slipping on a foreign substance on its premises if the invitee establishes that (1) the substance was placed there by the negligence of the business; (2) the business had actual notice of the substance; or (3) the substance was there a sufficient length of time so that, in the exercise of ordinary care, its presence should have been discovered, i.e., the business had constructive notice of the substance." *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 649 (7th Cir. 2014).

Here, there is no evidence that the defendant caused the yellow band to be on the floor. "To prove that the defendant, rather than a third party, created the dangerous condition, Illinois courts require a plaintiff to (1) demonstrate that the foreign substance was related to the defendant's business, and (2) offer some further evidence, direct or circumstantial, however slight, such as the location of the substance or the business practices of the defendant, from which it could be inferred

5

that it was more likely that defendant or his servants, rather than a customer, dropped the substance on the premises." *Piotrowski v. Menard, Inc.*, 842 F.3d 1035, 1038 (7th Cir. 2016) (internal quotations omitted).

There is no dispute the yellow band was related to the defendant's business. The defendant sold yard waste bags bundled with yellow bands. But there was no evidence that the defendant stored or displayed the yard waste bags near the entrance where the plaintiff fell. There was no evidence that the defendant removed yellow bands from yard waste bags (or any other product) near the entrance where the plaintiff fell. There was no evidence at all from which one could infer that the defendant's employees, rather than a customer, placed the yellow band on the floor near the entrance.

The plaintiff does not claim, nor is there any evidence that establishes, that the defendant had actual notice of the yellow band on the floor near the entrance where the plaintiff fell.

The evidence does not show that the defendant had constructive notice of the yellow band on the floor. "Illinois law does not establish any conclusive, across-the-board rule as to how long a substance must be on the floor to allow an inference of constructive notice." *Cruz*, 134 F.4th at 989. "Constructive notice can be established in Illinois by presenting evidence that the dangerous condition was present for a sufficient length of time such that in the exercise of ordinary care its presence should have been discovered, or by showing that the dangerous condition was part of a pattern of conduct or a recurring incident." *Piotrowski*, 842 F.3d at 1040.

The evidence shows that the yellow band was on the floor near the entrance to the store for at least four minutes prior to the plaintiff's fall. But the evidence does not establish when or how the yellow band came to be on the floor. Consequently, one cannot say whether the yellow band was on the floor for five minutes, ten minutes, or an hour or more.

Further, there is no indication that customer traffic was high as ten individuals walked past the yellow band in just under five minutes. Neither party presented sufficient evidence to establish anticipated customer traffic during this time. And viewing the surveillance footage establishes that this was not a high traffic time. Perhaps more importantly, none of those individuals who passed the yellow band appeared to notice it, which indicates that one exercising ordinary care would not have discovered the yellow band. Even the woman who came in contact with the band did not appear to notice the yellow band. A store employee tasked with retrieving a cart from the area also did not notice the yellow band. There is no evidence that this employee was assigned to the area near the entrance or that he had been tasked with keeping the area near the entrance clean. This employee testified that he did not see the yellow band on the floor that day and explained that, had he seen it, he would have picked it up "[j]ust to keep the store clean." R. 151 at 168. Accordingly, the plaintiff has not shown that the yellow band was on the floor near the entrance for a sufficient length of time such that in the exercise of ordinary care its presence should have been discovered by the defendant.

The plaintiff also has not shown that yellow bands on the floor near the entrance to the store were part of a pattern of conduct or recurring incident. Nor has the plaintiff shown a "pattern of dangerous conditions which were not attended to within a reasonable period of time." *Culli v. Marathon Petroleum Co.*, 862 F.2d 119, 126 (7th Cir. 1988). In *Culli*, there was "substantial evidence [of] spills on a daily basis" at a gas station and that the station was busy on the day of the accident. *Id.* at 126-27.

In this case, there were two instances, eleven days apart, where debris near the store's entrance caused someone to fall. In both instances, the debris was a yellow band. The plaintiff did not present any evidence concerning the volume of foot traffic during the prior incident. When the plaintiff fell, the store was not particularly busy as nine customers walked past the yellow band in just under five minutes. An employee also walked near the yellow band, but that employee came from another area of the store to retrieve a cart and then left the area without noticing the band. PX 17, 482147 at 19:19:08-19:19-59; R. 151 at 168.

Two instances, eleven days apart, is neither a daily occurrence nor a pattern of dangerous conditions. That distinguishes this case from *Culli*. This case is more in line with *Piotrowski*, where the defendant knew that decorative rocks in a parking lot planter sometimes ended up on the ground. *Piotrowski*, 842 F.3d at 1040. In *Piotrowski*, a general manager saw kids playing on the planter and knew that the rocks in the planter had to be replenished from time to time. *Id.* at 1037. But the general manager also inspected the area daily and the defendant's employees had to

8

report any hazards they saw. *Id.* The same is true here, where cleaners came in each night to clean the store and employees had a duty to clear any debris observed or reported to them.

One notable distinction between *Piotrowski* and this case is that the former did not have a prior incident involving the spilled rocks, *id.* at 1040, whereas this case does have a prior incident involving a yellow band. But that distinction has marginal significance here. In *Piotrowski*, the defendant knew that rocks leaving the planter was a somewhat regular occurrence as employees had to replenish the planter from time to time and knew to keep the area clear of debris. *Id.* at 1037. This was a potentially dangerous condition attended to within a reasonable period of time. *See id.* at 1040 ("Under these circumstances, Piotrowski has not shown a pattern of dangerous conditions or a recurring incident which was not attended to within a reasonable period of time.")

Here, there was no indication that yellow bands on the floor near the store entrance would be a frequent occurrence because there was no ready supply near the entrance. In contrast to *Piotrowski*, where the condition was foreseeable because rocks fell from the planter often enough that the defendant had to replenish the rocks in the planter, this case involves two isolated, albeit similar, incidents that occurred eleven days apart. There was no evidence that the two incidents involving yellow bands were related. There was no reason for the defendant to expect this to recur. As a result, the two instances involving a yellow band do not establish constructive notice. *See Dunlap v. Marshall Field & Co.*, 27 Ill. App. 3d 628, 631 (1975) (explaining

9

that constructive notice exists where "the evidence shows that the injury was caused by a regular and recurring dangerous condition which defendant was bound to foresee.").

Because the defendant did not place the yellow band on the floor near the entrance, and because the defendant did not have actual or constructive notice of the yellow band on the floor near the entrance, the defendant did not breach its duty to the plaintiff. Consequently, the Court finds for the defendant on the plaintiff's negligence claim.

## II. SPOLIATION

In Illinois, "a negligent spoliation claim requires the plaintiff to prove the traditional four elements of negligence: a duty to preserve the evidence; breach of that duty by loss of the evidence; that the loss proximately caused the plaintiff's inability to prove his underlying claim; and actual damages as a result." *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 608 (7th Cir. 2016). The duty to preserve evidence has two conditions, the relationship condition and the foreseeability condition. *Id.* at 609.

The relationship condition requires that the duty "arise[ ] by agreement, contract, statute, special circumstance, or voluntary undertaking." *Id.* (citation omitted; alteration in original). "[A] request by a plaintiff to preserve the evidence, or a defendant's segregation of the evidence for the plaintiff, are recognized as special circumstances." Here, in a letter dated June 29, 2020, the plaintiff requested that the defendant preserve "any and all videotapes, recordings, photographs, digital images, or video obtained via any surveillance, or other camera mounted near the incident

from June 16, 2020." DX 3. Once the defendant received this letter, there is no question that the defendant had a duty to preserve evidence.

But it is unclear what, if any, surveillance footage the defendant had (beyond that the defendant voluntarily preserved) when it received the plaintiff's letter. The Court invited the parties to supplement their trial briefs to identify any evidence in the record concerning what video surveillance footage the defendant possessed when it received the plaintiff's letter and the defendant's video surveillance footage retention policy. R. 157. The plaintiff, citing the defendant's employees' testimony concerning what they preserved, did not identify evidence of video surveillance footage beyond that preserved prior to the defendant's receipt of the plaintiff's letter. *See* R. 161. The defendant responded similarly, noting what the defendant's employees did to preserve footage before receiving the plaintiff's letter and referencing the defendant's policy. R. 162.

The difference in the responses is burden; the plaintiff has to prove that the defendant had additional footage when it received the plaintiff's letter and did not preserve it. Without establishing that the defendant had surveillance footage beyond what the defendant voluntarily preserved, the plaintiff cannot show that the defendant breached its duty to preserve that additional evidence. Therefore, the Court finds no spoliation with respect to the plaintiff's June 29, 2020.

Prior to receiving the plaintiff's preservation letter, the defendant took steps to preserve surveillance footage on its own. The store's manager completed an incident report and requested that the security department preserve video showing

11

the plaintiff in the store. The defendant's incident report is a standard form entitled, "General Liability Notice of Occurrence/Claim." PX 1. "[A] defendant may voluntarily assume a duty by affirmative conduct." *Boyd v. Travelers Ins. Co.*, 166 Ill. 2d 188, 195 (1995), *as modified on denial of reh'g* (June 22, 1995). The defendant has done that here. Because the defendant provided that surveillance footage to the plaintiff, there was no breach.

As to the foreseeability, it requires that "a reasonable person should have foreseen that the evidence was material to a potential civil action." *Id.* Here, the store manager who spoke to the plaintiff after her fall collected the yellow band.[1] She reported that the plaintiff "tripped on a piece of yellow banding wire." PX 1. She understood that the yellow band played a role in the plaintiff's fall. She took steps to preserve surveillance footage of the plaintiff in the store, to include several minutes before and after the plaintiff's fall. But she did not look for surveillance footage of how the yellow band came to be on the floor.

The store's general manager did, however. He testified that he would want to know how the yellow band got there. R. 152 at 158 ("How did it get there? Who put this there? Did it drop? Did somebody put it there? Did it blow in from outside?"). This indicates that a reasonable person should have foreseen that how the yellow band came to be on the floor was material. The Court notes, however, that it took careful scrutiny during repeated viewings to see the yellow band while obscured by

---

[1] As for the loss of the yellow band, there is no dispute that it caused the plaintiff to fall. Consequently, its absence had no impact on the plaintiff's ability to prove her case.

the ray of sunlight. To the extent that the store's general manager missed it, the Court finds no ill intent.

To establish causation, the plaintiff must "prove that the loss of the evidence would cause [her] to lose the underlying case." *Schafer*, 839 F.3d at 610. The plaintiff must also show that, with the evidence, she would have a "reasonable probability" of winning. *Id.* at 611. The plaintiff has not met her burden with respect to the former.

"There is no evidentiary presumption that the negligently lost evidence is favorable to the plaintiff." *Schafer*, 839 F.3d at 611. In this case, the evidence established that the store's surveillance system had a critical blind spot. Two cameras captured footage near the location where the plaintiff fell. One, camera 29, did not show the floor near the entrance. The other, camera 18, showed only a portion of the floor where the plaintiff fell. At the start of PX 17, 482147, only a small piece of the yellow band was captured by surveillance footage. Most of the yellow band was off camera. There was no testimony about how the yellow band got there.

The plaintiff has not presented any evidence that suggests that additional surveillance footage would have shown how the yellow band got there. While the plaintiff speculates that it would have, speculation is not proof. At trial, the evidence established that the defendant did not display or store yard waste bags, or any other product bound by a yellow band, near the entrance. Surveillance footage showed a customer who purchased yard waste bags, but that customer was leaving the checkout lane and heading toward the exit; the customer's path did not take her near the location where the plaintiff fell. The plaintiff testified that she did not know how

13

the yellow band got there. R. 150 at 194. The store's general manager testified that he reviewed the footage and could not determine how the yellow band came to be on the floor near the entrance. Notably, the plaintiff did not spend much time asking the general manager about his review of the surveillance footage. R. 152 at 172-80.

Consequently, there is no reason to find that additional surveillance footage would have shown how the yellow band got there. Said differently, the plaintiff has not shown that the missing surveillance footage prevented her from proving her case. *See*, *e.g.*, *Bulduk v. Walgreen Co.*, 2015 IL App (1st) 150166-B, ¶ 28 (affirming summary judgment on negligent spoliation claim where defendant reviewed surveillance footage, sent any surveillance footage showing the plaintiff to the plaintiff, and two cameras near the accident were not focused on the section where the plaintiff was injured).

That distinguishes this case from *Schafer*. In *Schafer*, a piece of scaffolding that fell and injured the plaintiff went missing. *Schafer*, 839 F.3d at 602. Prior to the accident, problems with the scaffolding led to concerns about "bad pieces." *Id.* at 611. Because it went missing, the plaintiff could not test the piece of scaffolding that hit him to show that the piece was defective. *Id.* at 612. The missing piece of scaffolding deprived the plaintiff "of the opportunity to develop this important proof." *Id.* Having the missing evidence would have allowed the plaintiff to answer whether the scaffolding was defective. The same was true in *Boyd v. Travelers Ins. Co.*, 166 Ill. 2d 188, 196 (1995), *as modified on denial of reh'g* (June 22, 1995). ("Plaintiffs were thereby deprived of the key piece of evidence in their products liability lawsuit

against Coleman—the product itself. They claim that, as a result, no expert could testify without doubt whether the heater was defective or dangerously designed.").

Because the plaintiff has not established a breach with respect to any duty arising from the plaintiff's June 29, 2020 letter, and because the plaintiff has not established any breach with respect to the surveillance footage the defendant voluntarily preserved, and because the plaintiff has not established causation, the Court finds for the defendant on the plaintiff's spoliation claim.

## CONCLUSION

The Court finds for the defendant on the plaintiff's negligence and spoliation claims.

Date: March 2, 2026

JEREMY C. DANIEL
United States District Judge